*April Sessions,* 1822.

The People *vs.* Timothy Keys and Nathan Smith.
*Conspiracy.**

NEW YORK,

The People
*vs.*
Tim. Keys
and
N. Smith.

THE defendants were indicted for conspiring to defraud George De Grass of a sloop, the Shepherdess, of the value of $650; and the means alledged were that they represented that a bond and mortgage, on lot No, 12, in Aurelius, county of Cayuga, held by Keys, was good and valid; and the overt act alleged to be was, that Keys procured from De Grass. possession of the sloop, whereas the bond and mortgage were of no validity.

Where during a negotiation between D and K, for the sale of a sloop by D to K,S represented to D that K was good, and that the title of lands described in a certain bond and mortgage about to be assigned as security for the sloop, was also good; and this assurance appeared to have been made by S *bona fide,* and his character was good; on a trial against K and S for conspiracy to defraud D of the sloop, it was considered that whatever might be the fraud practiced by K there was no conspiracy between K and S.

It appeared that about the 1st of June last, De Grass, a colored man, wanted to sell his sloop, and Keys called on him to make the purchase, alledging that he had landed property in New Jersey, and in Auburn, in this State; and after taking the advice of counsel, De Grass concluded to dispose of the sloop and take the security offered of lands in this State, if it should prove good, which he was first inclined to ascertain. Keys averred the security good and referred De Grass to Smith, who, as Keys said, had a certificate from the clerk of Cayuga county, that this mortgage was first on record, and that the title was good. De Grass accordingly called on Smith with Keys, when Smith told him that he had seen such certificate, which was in possession of Mr. White; that he believed the security to be valid; that if he had the money he would advance it for the same, and that Keys was good. After some further negotiation, Keys drew up an agreement be-

*Kindly furnished by Mr. Rodgers, Editor of the City Hall Recorder.

NEW-YORK,

The People
vs.
Tim. Keys
and
N. Smith.

tween himself and De Grass, by which he agreed to sell the sloop to Keys for $650, for which the bond and mortgage were to be asssigned ; and, if it should not turn out to be a valid security, that Keys should pay $1 a day for the use of the sloop for a year.    This agreement was executed by both parties.    De Grass shortly afterwards requested Keys to go with him to the office of John C. Hamilton, Esq., for his opinion as to the security, and to have the business properly ratified, and Keys agreed to go there with him.    On their way there, they had to pass the Custom house, when Keys pressed him to go in and transfer the bill of sale; and on his objecting Keys assured him that it should not prejudice him for that he might keep the papers in his own hands.    The parties went into the Custom-house, and the transfer was duly made, by which Keys became entitled to the possession of the sloop, though De Grass still held the papers.    After consulting with Mr. Hamilton, De Grass found that he had been rather too precipitate, and that in all probability, the bond and mortgage were all a *hum.*  He tried to induce Keys to retract, and after a great deal of negotiation between the parties, and as a means, if possible, of saving himself, De Grass agreed to take four lots of land in Greenwich village, which Keys was to procure for him in exchange for the sloop, and *boot* was to be given by De Grass; but it seems that Keys failed in this arrangement, and still held the sloop.    Civil suits were pending between the parties.

As respects the defence, Smith proved by several witnesses, that in April last White having written to the clerk of Cayuga county, George B. Throop, Esq., for information relative to this lot, received an answer, dated the 20th of the same month, containing a statement of the incum-

brances on the lot, and showing that the mortgage in question was the first on record. White showed this letter to Smith. Believing this security valid, Smith, in good faith, offered to join White in the purchase of the bond and mortgage, and afterwards made the representation above-mentioned to De Grass. It also appeared by the testimony of Alderman Wyckoff, from the bench, that he had known Smith eleven years, and his character, as a fair dealer, was excellent; and this was confirmed by the testimony of a number of other respectable witnesses. In truth, whatever might have been the transaction between Keys and De Grass, Smith appeared in no way implicated.

NEW-YORK,

The People
vs.
Timot'y Keys
and
Nathan Smith

In the course of the trial it appeared, that previous to the month of June last, Keys had taken a lease of a house in this city, and had assigned to the lessor this same security ; that its validity was drawn in question in a trial in Court where Keys was present ; that he was put into prison for some matter arising from that transaction ; and that on his offering to assign the same bond and mortgage to Elisha Morrel, Esq., a Councellor, Morrel told him that he had understood from one Mandeville, that the validity of the security had sometime before been tried in the Supreme Court, and that the decision was against its validity on the ground of a fraud ; and that, in Morrel's opinion, it was not worth a straw, and he ought not to carry it about him. This testimony was strongly objected to ; but the objection was overruled.

After the prosecution had rested, Messrs. *Price, Ketchum,* and *Wilson,* the two first being of counsel for Smith, and *Wilson* for Keys, submitted to the court whether there was sufficient evidence to put the defendants on their

NEW-YORK.

The People
vs.
Timot'y Keys
and
Nathan Smith
defence, inasmuch as no confederacy had been established and as the mortgage was not proved to be worthless.— *Price,* in support of his argument, read the several cases of *Cromwell, Field,* and *Shotwell,* from the City Hall Recorder.

After the prosecution had rested, the counsel for the defendants submitted to the Court, whether they ought to be put upon their defence. They argued, that whatever may have been the fraud of Keys in this transaction, no confederacy between them was established. On the contrary, the conduct of Smith, in every particular, was fair and *bona fide.* Besides, it does not appear that this mortgage was worthless; and without that the prosecution cannot be maintained.

*Price,* in support of his argument, referred to, and read the case of *Shotwell,* (4 City Hall, Rec. p. 76.) to show that it was incumbent on the prosecution to show the mortgage worthless; and he also read the case of *Cromwell* and *Field,* (Ibid, 3, vol. p. 34.) to show that the facts set forth in the indictment, and appearing in proof, would not support a criminal prosecution.

The *Recorder,* after the testimony had closed, deemed it but a waste of time for the counsel for the prosecution to press it to the jury; and *Anthon* admitted that the prosecution was not maintained, because Smith had proved an excellent character, and that he was not, in any shape, implicated, and without this there was no conspiracy; but he insisted that the Court, under the circumstances, ought to bind over Keys to answer the charge for obtaining goods *by false pretences.*

*Wilson,* from the testimony, of which he took a view,

resisted the application; but the Court ordered Keys to be recognised in $500, and two sureties of $250 each, to answer that charge.